**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THOMAS FLUM,

      Petitioner,                      Civil No. 04-CV-72671-DT
                                          HONORABLE NANCY G. EDMUNDS
v.                                  UNITED STATES DISTRICT JUDGE

KEN McKEE,

      Respondent,

_____/

**<u>OPINION AND ORDER DENYING THE</u>**
**<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**

      Thomas Flum, ("Petitioner"), presently confined at the Chippewa Correctional

Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his

conviction on one count of first-degree felony murder, M.C.L.A. 750.316; M.S.A.

28.548. For the reasons stated below, the petition for writ of habeas corpus is

**DENIED.**

**I.  Background**

      Petitioner was originally charged with conspiracy to commit murder, first-

degree premeditated murder, first-degree felony murder, and larceny in a building.

Petitioner was jointly tried with co-defendant Mary Elizabeth Keimer in the Genesee

County Circuit Court before separate juries. Petitioner was convicted of second-

degree murder as a lesser included offense from the first-degree premeditated

1

murder charge, guilty as charged of first-degree felony murder, and guilty of larceny

in a building.  The larceny in a building charge was vacated at sentencing by the trial

court judge.  This Court recites verbatim the relevant facts regarding petitioner's

conviction from the Michigan Court of Appeals' opinion affirming his conviction,

which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp.

2d 753, 758 (E.D. Mich. 2001):

> For approximately one year before the murder of Bonnie May Burdt,
> Keimer, her daughter, Nicole Grenier, and the victim all lived together
> in a house owned by Burdt.  Keimer was a habitual drug user who had
> been in and out of treatment several times.  When Keimer's father died,
> Burdt sold her house in Kewadin, Michigan, and moved back into her
> house in Mount Morris Township to help Keimer stay off drugs.  Keimer
> was not working at the time, and her income consisted of disability
> retirement checks from General Motors, her former employer.  Keimer
> had agreed to cash these checks with Burdt and turn the money over
> to Burdt for safe keeping.  Burdt would then pay Keimer a weekly
> allowance; this arrangement was aimed at keeping Keimer from
> purchasing drugs.  Keimer was apparently drug free from January 1998
> until sometime near the end of the year.  In September 1998, however,
> she allegedly stole Burdt's ATM card and began stealing $ 200- $ 500
> per day from Burdt's bank account to buy drugs.  Keimer also allegedly
> had been intercepting the mail and stealing Burdt's bank statements so
> that Burdt would not discover the thefts.
>
> Flum met Keimer while both were in drug rehabilitation approximately
> two years before the murder.  Keimer called Flum several times during
> the two-week period preceding the murder and ultimately wired bus fare
> money to Flum, who arrived in Flint on the night of January 26, 1999.
> The murder of Burdt in her house occurred the next day.
>
> The murder was allegedly committed during the course of a larceny of
> Burdt's property by defendants.  The prosecution theorized that while
> the motive for the larceny was in part to make the murder look like it
> occurred during a robbery, the murder was also part of a plan by
> Keimer to steal bank statements and money from Burdt.  Several items

had been removed from the house to the garage, including a safe containing money that had been in Burdt's possession and control. The prosecution's theory was that Keimer murdered Burdt for her money and that Flum was an active participant in the murder and larceny. The prosecution also argued to the jury, however, that at the very least the evidence proved Flum's guilt as an aider and abettor of these crimes.

Burdt's body was discovered later that day by Nicole Grenier. A liquid toxic chemical had been poured into a plastic bag and secured over Burdt's head by taping the bag around her neck. Burdt was forced to ingest both the toxic chemical and its fumes. The chemical was so caustic that it caused extensive external and internal injuries. Burdt also suffered a number of defensive injuries, all of which were incurred while she was still alive.

Flum was arrested at a nearby motel the next day. The police recovered Flum's fingerprints from several items found in Burdt's car, and shoeprints matching Flum's shoes were found in Burdt's house and garage. At the motel room, the police seized a purse containing bank statements and other papers belonging to Burdt, as well as blood-stained clothing and other items. The bank statements showed a pattern of $ 200, $ 300, and $ 500 daily withdrawals from Burdt's savings account, reducing the balance from $ 66,462.87 in October 1998 to $ 16,787.29 by January 1999. The prosecution also presented evidence that Flum had fresh scratches on his back and that the victim had human blood under her fingernails.

*********************************************************************************

In two taped interviews with the police, which were played to the jury, Flum gave conflicting statements to the police. After initially denying any knowledge of Burdt's death, Flum ultimately claimed that Keimer killed Burdt. Flum maintained that although he was present when the murder occurred, he did not encourage or participate in the killing and purportedly attempted to intervene. Flum stated that he was asked by Keimer to act as a lookout for her when they first went to Burdt's house. Flum further claimed that at Keimer's request, while she was killing her mother, he moved a homemade safe that supposedly contained $ 500 or $ 600 out of the house and into the garage. Flum stated that after they returned to the motel, they purchased drugs with some of the stolen money.

*People v. Flum,* 229084, * 2-3 (Mich.Ct.App. May 20, 2003).

3

Petitioner's first-degree felony murder conviction was affirmed on appeal, although his second-degree murder conviction was vacated on double jeopardy grounds. *Id., lv. den.* 469 Mich. 951; 671 N.W. 2d 48 (2003). Further facts will be discussed when addressing petitioner's claims. Petitioner now seeks habeas relief on the following grounds:

I.   Mr. Flum's second-degree murder conviction and larceny in a building conviction lack sufficient evidence.

II. The judge gave misleading, inaccurate, and confusing instructions to the jury on the charges of felony murder and larceny in a building.

III.  The trial judge failed to remove a juror after learning that the juror had read a lengthy newspaper article about the case.

IV.  The trial judge refused to remove a juror once he learned that the juror knew the co-defendant and the decedent.

V.   The trial judge erred by refusing Mr. Flum's request for an instruction on accessory after the fact.

VI. The judge gave an erroneous, inaccurate, and misleading response to the jury's inquiry.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

### A.  Claim # 1.  The sufficiency of evidence claim.

Petitioner first contends that there was insufficient evidence to convict him of first-degree felony murder. [1]

---

[1]  To the extent that petitioner is challenging the sufficiency of evidence to convict him of second-degree murder and larceny in a building, the claim is mooted by the fact that these convictions were vacated by the state courts. *See United States v. Uhler,* 963 F. 2d 861 (Table); 1992 WL 111124, * 1 (9th Cir. May 19, 1992).  However, because petitioner is proceeding *pro se,* as well as the fact that petitioner challenged the sufficiency of evidence to convict him of felony murder in his state court appeal, this Court will assume that petitioner is also challenging the sufficiency of the evidence to convict him of this crime.

5

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). The scope of review in a federal habeas proceeding to the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock,* 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002). Finally, a habeas court does not substitute its own judgment for that of the finder of fact. *See Crenshaw v. Renico,* 261 F. Supp. 2d 826, 832 (E.D. Mich. 2003).

Petitioner's primary argument appears to be that the evidence was insufficient to convict him of first-degree felony murder because there were no eyewitnesses to the murder and the evidence was entirely circumstantial and based solely on statements that petitioner made while he was in custody. Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt.

6

*Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted). Circumstantial evidence from which a reasonable inference of a habeas petitioner's guilt beyond a reasonable doubt may be drawn is constitutionally sufficient to sustain a conviction. *Crenshaw v. Renico,* 261 F. Supp. 2d at 832.  Moreover, eyewitness identification is not necessary to sustain a conviction. *See United States v. Brown,* 408 F. 3d 1049, 1051 (8th Cir. 2005); *Dell v. Straub,* 194 F. Supp. 2d at 648.  Finally, provided that there is no constitutional problem in the admission of a petitioner's confession to the police, a habeas court may consider a habeas petitioner's confession when reviewing a sufficiency of evidence claim. *See e.g. Pemberton v. Collins,* 991 F. 2d 1218, 1223 (5th Cir. 1993).  The question for this Court, then, is whether there was sufficient evidence presented in this case to convict petitioner of first-degree felony murder.

The elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (*i.e.*, malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Terry v. Bock,* 208 F. Supp. 2d 780 at 794 (citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

In the present case, the underlying predicate felony was larceny in a building. The elements of larceny in a building under Michigan law include the actual or

constructive taking of goods or property, the carrying away or asportation with felonious intent of goods and property of another, without the consent and against the will of the owner, within the confines of a building. *Malcum v. Burt,* 276 F. Supp. 2d 664, 686 (E.D. Mich. 2003)(citing *People v. Mumford,* 171 Mich. App. 514, 517-518; 430 N.W. 2d 770 (1988)).

The Court also notes that the prosecutor argued in this case that petitioner was guilty, at the very least, of aiding and abetting Keimer in the commission of the felony murder.  To support a finding that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*People v. Carines*, 460 Mich. at 757-58.

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)).

8

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981).  Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995).  The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995).  An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *People v. Turner,* 213 Mich. App. at 568-69.

9

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999); *Fuller v. Anderson*, 662 F. 2d at 424. However, a claim of mere presence is not a "catch-all excuse" to defeat an inference of guilt beyond a reasonable doubt. In evaluating a "mere presence" defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability. *See Duran v. Pepe*, 899 F. Supp. 839, 843 (D. Mass. 1995). An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal. Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id.*

In the present case, the Michigan Court of Appeals' rejection of petitioner's sufficiency of evidence claim was not an unreasonable application of clearly established federal law. The Michigan Court of Appeals first noted that petitioner's

statement to the police indicated that he came to Flint from Detroit at Keimer's request and, knowing Keimer's intention to murder her mother, accompanied Keimer to her mother's house to act as a lookout while Keimer killed the victim. Under Michigan law, acting as a lookout is considered sufficient assistance to support a conviction on an aiding and abetting theory. *People v. Flum,* Slip. Op. at * 5 (citing *People v. Fuller*, 395 Mich. 451, 453-54; 236 N.W. 2d 58 (1975); *People v. Lyons*, 70 Mich. App. 615, 618; 247 N.W. 2d 314 (1976)).  Petitioner's role as a lookout while Keimer committed the larceny and murder would be sufficient evidence under Michigan law to support petitioner's conviction for felony murder under an aiding and abetting theory. *See e.g. Terry v. Bock,* 208 F. Supp. 2d at 795.

The Michigan Court of Appeals further ruled that petitioner's statements to the police and the physical evidence "directly and inferentially indicated that" petitioner participated in Burdt's murder with the requisite malice and was more directly involved than petitioner admitted.  In particular, the fact that the victim had defensive wounds and human blood under her fingernails and that petitioner had fresh scratches on his back further supported a reasonable inference that petitioner was an active participant. *People v. Flum,* Slip. Op. at * 5.  In addition, petitioner conceded that there was evidence that he assisted Keimer in removing money from the victim's safe and that he and Keimer later purchased drugs with some of that money.  The Michigan Court of Appeals determined that the jury could draw the fair

11

inference that the cash that petitioner and Keimer stole from the safe belonged to Burdt, not Keimer, as petitioner had speculated.  The Michigan Court of Appeals determined that the substance and manner of petitioner's statements to the police, the scratches on his back, the bloody clothes, as well as the fact that the victim's property was found in petitioner's motel room and his shoeprints were "abundant" in Burdt's bedroom and throughout her house gave "strong support to the inference that" petitioner had the requisite intent and participated in Burdt's murder and the larceny of her property. *Id.*

In the present case, there was sufficient evidence for a rational trier of fact to infer that petitioner was involved in the felony murder of the victim.  The fact that petitioner had scratches on his face and the victim had blood under her fingernails was circumstantial evidence that petitioner was involved in her murder. *See State v. Brown,* 636 So. 2d 964, 966-67 (La. App. 1994). [2]  The fact that the police found blood stained clothing in petitioner's motel room would further support an inference that petitioner inflicted some of the wounds himself. *See e.g. Russell v. Collins,* 998 F. 2d 1287, 1294 (5th Cir. 1993).  Moreover, the fact that petitioner was found in possession of some of the victim's property was also sufficient to support petitioner's conviction for felony murder. *See Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(evidence was sufficient to support petitioner's convictions

---

[2]  When there is paucity of federal law on a subject, state decisions interpreting the Federal Constitution, while not binding on a federal court, are persuasive. *See Millender v. Adams*, 187 F. Supp. 2d 852, 874, n. 6 (E.D. Mich. 2002); *aff'd* 376 F. 3d 520 (6th Cir. 2004); *cert. den.* 125 S. Ct. 1645 (2005).

for felony murder, where petitioner had possession of murder victim's diamond ring, petitioner knew the murder victims, and a witness testified that petitioner was present near the crime scene before and after the time of the murders).  Finally, the fact that petitioner's shoeprints were found throughout Burdt's bedroom and house clearly linked petitioner to the murder and supported an inference that he participated in the murder and larceny of the victim. *See Rogers v. Goord,* 371 F. Supp. 2d 348, 356 (W.D.N.Y. 2005).  Petitioner is therefore not entitled to habeas relief on his first claim.

### B.  Claim # 2.  The jury instruction claim involving specific intent.

Petitioner next claims that the trial court gave the jury a flawed instruction on the specific intent element needed for felony-murder.  Respondent contends that petitioner's second claim is procedurally defaulted, because petitioner did not make a proper objection to this instruction at trial and the Michigan Court of Appeals relied on this failure to properly preserve the error in affirming petitioner's conviction.

In the present case, the Michigan Court of Appeals found that petitioner had failed to object to the specific deficiencies in the jury instructions that he raised on appeal.  Consequently, the Michigan Court of Appeals reviewed petitioner's claim solely for plain error and finding none, affirmed his conviction. *People v. Flum,* Slip. Op. at * 6.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause"

13

for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his jury instruction claim. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's claim does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claim for plain error as enforcement of the

14

procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of petitioner's claim does not mean that this claim was not procedurally defaulted. A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991); *Pearl v. Cason,* 219 F. Supp. 2d 820, 828 (E.D. Mich. 2002). Petitioner's second claim is procedurally defaulted.

In the present case, petitioner has offered no reasons for his failure to object to the allegedly improper jury instructions. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533; *Meade v. Lavigne*, 265 F. Supp. 2d at 872. Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his claim as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim (Claim # I) is insufficient to invoke the actual innocence exception to the procedural default doctrine. *See Anthony v. Schuppel,* 86 F. Supp. 2d 531, 538 (D. Md. 2000). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, petitioner's claim is procedurally defaulted. *Pearl v. Cason,* 219 F. Supp. 2d at 828. Petitioner is therefore not entitled to habeas relief on his second claim.

15

**C. Claims # 3 and # 4.  The impartial jury claims.**

The Court will consider petitioner's third and fourth claims together because they are interrelated.  In his third claim, petitioner contends that the trial court erred in denying his motion to remove a juror who had read a newspaper article about petitioner's case after the trial started.  In his fourth claim, petitioner contends that the trial court erred in denying his motion to remove a juror who allegedly knew the co-defendant and the murder victim.

The Michigan Court of Appeals rejected petitioner's third claim by noting that petitioner had failed to show that the juror had any actual prejudice or bias towards him as a result of reading the article.  The juror had been questioned by the trial court and had informed the trial court judge that he did not talk to any of the other jurors about the newspaper article.  The juror also told the trial court that the newspaper article would not affect his ability to be fair and impartial.  The juror indicated that he did not recall anything specific about the article and believed that it only reported what the witnesses had testified to in court.  The juror indicated that he could set aside anything that he read about in the article and promised to decide the case based on the evidence admitted at trial.  The Michigan Court of Appeals concluded that the trial court did not err in failing to remove this juror. *People v. Flum,* Slip. Op. at * 7.  With regard to petitioner's fourth claim, the Michigan Court of Appeals noted that the trial court had questioned the juror and there was no

16

evidence that this juror knew or recognized either Keimer or the victim. Accordingly, it was not error for the trial court to fail to remove this juror from the panel. *Id.*

The Sixth Amendment guarantees the right to a trial by an impartial jury. *Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968). The constitutional standard of fairness requires that a defendant in a criminal case have a panel of impartial, "indifferent" jurors. *Irvin v. Dowd*, 366 U.S. 717, 722(1961).

The question of whether a trial court has seated a fair and impartial jury is a factual one, involving an assessment of credibility. *Gall v. Parker,* 231 F. 3d 265, 308 (6th Cir. 2000)(citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). A state trial court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254 unless a habeas petitioner can prove otherwise by convincing evidence. *Gall v. Parker,* 231 F. 3d at 334.

Regarding petitioner's third claim, the trial court's failure to excuse the juror who read a newspaper article about petitioner's case did not render petitioner's trial fundamentally unfair, in light of the fact that the juror advised the trial court about the information that he had received from the newspaper article, but assured the trial court that he could be fair and impartial. *See Zuern v. Tate,* 336 F. 3d 478, 486-87 (6th Cir. 2003). This is particularly true in light of the fact that this juror indicated that he could not recall anything specific about the article regarding the case, as well as his assurance that he had not formed an opinion about the case and would

be willing to decide the case solely on the basis of the evidence presented in court. *See United States v. Murray,* 103 F. 3d 310, 322-23 (3rd Cir. 1997)(juror's reading of newspaper article about case shortly before trial commenced did not warrant striking of juror for cause, where the district court was satisfied that the juror could serve impartially, in view of the juror's apparent inability to remember all of the article, her denial that she had formed any opinion as to the defendant's guilt or innocence, and her affirmance that she could decide the case on the basis of the evidence).  The Court therefore rejects petitioner's third claim.

Petitioner is also not entitled to habeas relief on his fourth claim.  In order to obtain a new trial because a juror has given a mistaken response to a question on *voir dire,* the litigant must demonstrate first, that the juror failed to answer honestly a material question on *voir dire,* and secondly, show that the correct response would have provided a valid basis for a challenge for cause. *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556 (1984).  In this case, after petitioner's counsel alerted the trial court to Keimer's allegations that this juror was acquainted with her and the victim, the trial court asked the jurors if any of them recognized the victim or any of the parties involved.  None of the jurors answered affirmatively.  Petitioner has provided no evidence to this Court that this particular juror knew or recognized either the victim or the co-defendant.   Conclusory allegations in a habeas petition, without evidentiary support, do not provide a basis for habeas relief. *Payne v. Smith,* 207 F. Supp. 2d 627, 650 (E.D. Mich. 2002); *See*

18

also *Pitts v. Redman,* 776 F. Supp. 907, 923 (D. Del. 1991)(conclusory allegations did not demonstrate that petitioner's trial was unfair by virtue of a biased jury). Petitioner's fourth claim fails, because petitioner has provided no evidence to this Court to show that this juror's responses regarding any prior relationship with the co-defendant or the victim were dishonest or motivated by partiality. *See Van Kahl v. United States,* 242 F. 3d 783, 791 (8th Cir. 2001).

### D.  Claim # 5.  The lesser included offense claim.

Petitioner next claims that the trial court erred in refusing to instruct the jury on the lesser included offense of being an accessory after the fact.  The Michigan Court of Appeals rejected this claim, finding that under Michigan law, being an accessory after the fact is not a cognate offense of murder. *People v. Flum,* Slip. Op. at * 8 (citing *People v. Perry,* 460 Mich. 55, 66; 594 N.W.2d 477 (1999)).

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(*citing to Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)). Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id.  Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v.*

*Coyle,* 260 F. 3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990).

In this case, petitioner is not entitled to habeas relief on his claim. First, the Michigan Court of Appeals determined that petitioner was not entitled to an instruction for the offense of accessory after the fact under Michigan law. Where a state court has reviewed a habeas petitioner's request for a lesser included offense instruction and concludes that it was not warranted by the evidence presented at trial, that conclusion is "axiomatically correct, as a matter of state law." *Bagby v. Sowders,* 894 F. 2d at 795. In the present case, the Michigan Court of Appeals' decision that petitioner was not entitled to an instruction on accessory after the fact was not an unreasonable application of clearly established federal law, in light of the fact that accessory after the fact is not a lesser included offense to first or second-degree murder under Michigan law. *See David v. Lavinge,* 190 F. Supp. 2d 974, 985-87 (E.D. Mich. 2002).

Secondly, because there was sufficient evidence to find petitioner guilty of the offense of first-degree felony murder, (*See* Claim I, *supra),* petitioner is not entitled to habeas relief on this claim. *See Reedus v. Stegall,* 197 F. Supp. 2d 767, 784 (E.D. Mich. 2001). Petitioner's fifth claim is without merit.

**E.  Claim # 6.  Failure to adequately respond to the jury's inquiry.**

20

In his final claim, petitioner contends that the trial court failed to adequately respond to a question from the jury about whether they were required to find petitioner guilty of felony murder, if they also found him guilty of second-degree murder and larceny in a building.

As an initial matter, this Court notes that although the respondent provided a copy of the trial transcript involving the jury instructions, (Vol. VIII, June 2, 2000), the pages involving the instructions that were given to petitioner's jury are missing. The general rule is that a district court must review the entire state court trial transcript in federal habeas cases, and where substantial portions of that transcript were omitted before the district court, the habeas case should be remanded to the district court for consideration in light of the full record. *See Adams v. Holland,* 330 F. 3d 298, 406 (6th Cir. 2003). However, a district court is not required to examine transcripts before disposing of a claim where a habeas petitioner's arguments are "readily susceptible to resolution without resort to the transcript." *See Love v. Butler*, 952 F. 2d 10, 15 (1st Cir. 1991). In *Love*, the First Circuit held that it was not error for the district court to dispose of the habeas petition without reviewing the trial transcripts, where the district court had before it the parties' briefs, the relevant state court decisions, a copy of an unsuccessful application for further appellate review, and certain grand jury minutes. *Id.* at 15. Other cases have reached a similar result. *See Maynard v. Dixon,* 943 F. 2d 407, 411 (4th Cir. 1991)(district court did not err in entering summary judgment in habeas corpus case without formally

21

submitted transcript where although court lacked full transcript, it had access to relevant portions of the transcript since they were included in the habeas petition, those excerpts included references to transcript pages, and the habeas petition had been certified as true); *See also Cole v. New Mexico,* 58 Fed. Appx. 825, 828 (10th Cir. 2003)(record was adequate without transcript of additional state proceedings to determine whether habeas petitioner procedurally defaulted in state court by failing to file timely writ of certiorari from state postconviction ruling; record included copies of judgment and sentence, appellate briefs, decision on direct appeal, state court postconviction petition and summary dismissal of that petition); *David v. Lavinge,* 190 F. Supp. 2d at 986, n. 5 (district court quoted the lengthy state court analysis in full because the analysis thoroughly explained petitioner's claim and because portions of the trial transcript quoted by the state court were missing from the record before the court).

In the present case, the respondent has provided the Court with a copy of petitioner's brief on appeal that was submitted to the Michigan Court of Appeals as part of the direct appeal.  In this brief, petitioner's appellate counsel quoted the trial court judge's responses to the jury's questions verbatim. [3]  Due to the brevity of the petition for writ of habeas corpus, this Court is willing to incorporate the arguments raised in petitioner's state appellate court brief as being part of petitioner's application for writ of habeas corpus. *See Burns v. Lafler,* 328 F. Supp. 2d 711,

---

[3] *See* Brief on Appeal, dated June 19, 2001, pp. 34-35, part of this Court's Docket Entry # 21.

717, n. 2. (E.D. Mich. 2004).  The Court will therefore address petitioner's sixth

claim.

During the course of deliberations, the jury asked the trial court if it was

required to find petitioner guilty of first-degree felony murder if they found that he

had committed the offenses of second-degree murder and larceny in a building.

The trial court responded as follows:

> "To answer–the answer to that question is no, assuming that if you
> said second degree murder– let me say this.  If you said Second
> Degree Murder under Count 2, it's still possible that you could come
> back with felony murder under Count 3.
>
> If you said Second Degree Murder under Count 3, you get only one
> choice under Count 3.  Under any of these counts you only get one
> choice.  So you can't put two choices under any one count....
>
> Or is Felony Murder not possible?  If you came back under Count 2
> with Second Degree Murder and you came back with Felony Murder
> under Count 3, that is possible.  Okay, you understand that?  That is
> possible.  But you can't put two choices under any one count.  That
> would not be appropriate.  You have to choose one, okay?" [4]

A federal court in a habeas corpus proceeding must do more than find a jury

instruction in a state criminal trial was erroneous to grant habeas relief. *See Smith*

*v. Anderson,* 505 F. Supp. 642, 644 (E.D. Mich. 1980).  The question on habeas

review of jury instructions is "whether the ailing instruction by itself so infected the

entire trial that the resulting conviction violates due process." *Cupp v. Naughten,*

414 U.S. 141,147 (1973).  "It is well established that the instruction 'may not be

---

[4]  *See Id.*

judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire,* 502 U.S. 62, 72 (1991)(quoting *Naughten,* 414 U.S. at 147).

Where a jury, desiring additional instructions, makes explicit its difficulties, a trial judge should clear them away with concrete accuracy. *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946).   However, a trial court is also entitled to exercise its sound discretion in deciding how best to respond to inquiries made by a jury during its deliberations. *See United States v. Brown*, 276 F. 3d 211, 216 (6th Cir. 2002).   No error need be found where a supplemental charge is responsive to the jury's specific request for clarification. *Alvarez v. Scully*, 833 F. Supp. 1000, 1007 (S.D.N.Y. 1993).   Even where error is found, reversal is not automatically warranted because the error must be assessed in the context of both the original and supplemental instructions as a whole. *Id.*

In the present case, petitioner's appellate counsel argued on appeal that the trial court's instruction was misleading, because the trial court failed to re-instruct the jury that in order to convict petitioner of felony murder, it had to find that the killing occurred during the perpetration or attempted perpetration of a felony. However, petitioner's counsel conceded in her brief that the jury was instructed during the initial jury charge that in order to find petitioner guilty of felony murder, it would have to find that he committed the murder while perpetrating or attempting to perpetrate a larceny in a building.

24

The trial court's supplemental jury instruction, viewed as a whole in the context of the entire jury charge was not, as a matter of law, erroneous. Even if the supplemental charge was confusing, in light of the correct original charge containing the additional instruction which indicated that to find petitioner guilty of felony murder the jury had to find that petitioner committed or was attempting to commit larceny in a building at the time of the murder, as well as the compelling evidence of petitioner's guilt, there is no indication that the supplemental instruction so infected the entire proceeding as to result in a denial of due process. *See Lugo v. Kuhlmann*, 68 F. Supp. 2d 347, 374 (S.D.N.Y. 1999).

To the extent that petitioner's appellate counsel contended that the trial court's instruction prevented the jury from reaching a compromise verdict, petitioner would not be entitled to habeas relief on that claim. While it is true that consistency in verdicts or judgments is not required, *See Hamling v. United States*, 418 U.S. 87, 101 (1974), this Court has been unable to find any cases that support the proposition that a jury must be instructed that they have a right to return inconsistent verdicts. It is both unreasonable and impermissible to provide a jury with an opportunity to render a lenient or compromise verdict with no evidentiary basis. *United States v. Busic*, 592 F. 2d 13, 24 (2nd Cir. 1978); *See also Dukette v. Perrin*, 564 F. Supp. 1530, 1537 (D.N.H. 1983)(no criminal defendant has the constitutional right to insist on a lesser included offense solely to "invoke the mercy-dispensing prerogative of the jury")(quoting *United States v. Sinclair*, 444 F. 2d 888,

25

890, n. 3 (D.C. Cir. 1971)). Moreover, there is no constitutional right to jury nullification. *See Crease v. McKune*, 189 F. 3d 1188, 1194 (10th Cir. 1999). Although juries have the power to nullify or to exercise a power or lenity, " it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent." *United States v. Thomas,* 116 F. 3d 606, 615 (2nd Cir. 1997).

Based upon the foregoing, this Court concludes that petitioner does not have a federal constitutional right to have the jury instructed that they could compromise their verdict by finding petitioner guilty of second-degree murder and larceny in a building, but not guilty of first-degree felony murder. Petitioner's last claim claim is without merit.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002). A district court therefore has the power to deny a certificate of appealability *sua sponte. See Dell v. Straub,* 194 F. Supp. 2d at 658.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dell,* 194 F. Supp. 2d at 659. The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*


<u>s/Nancy G. Edmunds</u>
Nancy G. Edmunds
United States District Judge

Dated: September 21, 2005

27

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 21, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager